IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JESSICA WEBSTER-VALENTINO, BARBARA FREEMONT, AMEN SHERIDAN, RODNEY MORRIS, DORAN MORRIS, JR., FORREST ALDRICH, MITCHELL PARKER, TILLIE ALDRICH, and JEFF MILLER,<br><br>    Defendants. | 8:16CR277<br><br>FINDINGS AND RECOMMENDATION |

   This matter is before the Court on Defendants' Joint Motion to Dismiss Indictment for Lack of Federal Jurisdiction (Filing No. 161) and the Motion to Dismiss Indictment for Lack of Federal Jurisdiction (Filing No. 183) filed by Defendant, Tillie Aldrich.[1]  Defendants jointly filed one brief (Filing No. 162) supporting the motions.  The government filed a brief (Filing No. 196) in opposition.  The Court denied Defendants' request for an evidentiary hearing, and the motions were deemed submitted.

## BACKGROUND

   On September 21, 2016, a grand jury returned a twenty-count Indictment (Filing No. 1) against the above-named nine defendants.  The Indictment sets forth the following factual allegations:

   The Omaha Tribe of Nebraska ("the Omaha Tribe") is a federally recognized Indian tribe located in the District of Nebraska and is governed by an elected tribal council.  At the time the offenses occurred, the tribal council consisted of: a Chairman, Defendant Amen Sheridan ("Sheridan"); a Vice-Chairman, Defendant Doran Morris, Jr. ("Morris, Jr."); a Secretary, Defendant Forrest Aldrich ("F. Aldrich"); a Treasurer, Defendant Jeff Miller ("Miller"), and three general members, Defendants Rodney Morris ("Morris"), Tillie Aldrich ("T. Aldrich"), and Mitchell Parker ("Parker").

---

[1] Although the Defendants' joint motion (Filing No. 161) and brief (Filing No. 162) state they were filed on behalf of all defendants, Defendant Tillie Aldrich also filed a separate motion adopting the joint motion and joint brief.

The United States Department of Health and Human Services ("HHS") and the Indian Health Services ("IHS") are departments or agencies of the executive branch of the United States. The Carl T. Curtis Health Education Center ("the Center") is a health care facility located in Macy, Nebraska, on the Omaha Indian Reservation. The Center provided health care services to tribal members of the Omaha Tribe and was funded, in part, through a contract with the IHS. Defendant Jessica Webster-Valentino ("Webster-Valentino") was employed at the Center as its Administrative Officer, and Defendant Barbara Freemont ("Freemont") was employed in the finance department of the Omaha Tribe. The Center billed insurance companies and Medicaid for services rendered to tribal members.

The IHS provided funding to the Omaha Tribe for tribal programs pursuant to the Indian Self-Determination and Education Assistance Act ("ISDA"). Contracts issued pursuant to the Act were referred to as "638 contracts." An IHS 638 contract funded the Center, and the funds received by the Omaha Tribe pursuant to the IHS 638 contract were deposited into a bank account used for paying expenses of the Center. Generally, the terms of the IHS 638 contract required that the Omaha Tribe use the federal funds to pay for direct costs of programs identified in the contract and to pay certain amounts of indirect costs to the Omaha Tribe for administrative services related to tribal programs funded by the contract. Before a tribal program expended funds, a purchase requisition form would be prepared and submitted to the finance department of the Omaha Tribe. Certain purchase requisitions had to be approved by the tribal council before payment would be made.

Congress failed to appropriate sufficient funds to fully pay all ISDA contracts, including the IHS 638 contracts, leading to litigation by several Indian tribes. In June 2012, the Supreme Court of the United States issued a ruling in *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182 (2012), requiring the government to fully pay unpaid ISDA contracts, which would include IHS 638 contracts. Subsequent to the Supreme Court ruling, in 2012, the Omaha Tribe filed a claim with IHS for unpaid contracts for contract years 2006-2011. Previously, in 2005, the Omaha Tribe had filed a separate claim for contract years 1995-2005. The total amount of claims submitted by the Omaha Tribe was approximately $8,936,000.

On October 16, 2012, Webster-Valentino and Freemont exchanged emails regarding their proposals to pay bonuses or incentives to themselves, the tribal council, and others. In the emails, Freemont suggested that the tribal council would approve Webster-Valentino and

Freemont's proposed bonuses if the tribal council received more for themselves. Freemont also suggested the proposed payments could be taken from the contract carryover funds from the Center. On October 17, 2012, Freemont emailed Webster-Valentino directing her to send a requisition form to Miller for approval of the proposed bonuses or incentives, which Miller did. The same date, Sheridan and F. Aldrich signed a $6,404.44 check payable to Morris, and F. Aldrich and Morris signed a $7,000 check payable to Sheridan. Both checks were drawn on the Center's bank account. The next day, on October 18, 2012, Freemont cashed a $7,000 check drawn on the Center's bank account.

On October 23, 2012, Freemont sent a letter to Miller supporting Freemont and Webster-Valentino's request for a bonus or incentive for themselves and the tribal council. On October 25, 2012, Webster-Valentino met with Morris and F. Aldrich and solicited their approval of the requested bonuses or incentives. On the same date, Webster-Valentino cashed a $7,000 check, and on the next day, she cashed a $82,362 check. On October 29, 2012, Freemont cashed a $82,362.92 check. Each of the cashed checks were drawn on the Center's bank account.

On November 5, 2012, the tribal council approved the request from Freemont to pay a percentage of the Omaha Tribe's Contract Dispute Act claim to the Defendants. The same date, Morris, Jr., endorsed and cashed a $7,000 check payable to himself, Parker endorsed and cashed a $7,000 check payable to himself, and Sheridan endorsed and cashed a $7,000 check payable to himself. The checks were each drawn on the Center's bank account.

Also on November 5, 2012, the tribal council approved T. Aldrich's motion requesting to pay $7,500 to each member of past tribal councils dating back to 1994. Morris approved and submitted a purchase requisition form to the finance department of the Omaha Tribe, requesting the additional amounts be paid to Sheridan, Morris, Morris, Jr., F. Aldrich, Parker, T. Aldrich, and Miller. These amounts were not paid because Jessica Webster-Valentino refused to permit funds of the Center to be used for that purpose.

The Indictment alleges that, in sum, Webster-Valentino and Freemont each received $89,692.92; Miller received $40,213.32; the remaining named defendants each received $13,404.44; and several unnamed tribal employees received between $3,000 and $26,808.88. According to the Indictment, as of the date the above payments were approved and paid, the IHS had not approved or acknowledged the validity of the Omaha Tribe's contract claims, which

3

ultimately did not settle until 2015.[2] The government alleges the monies used to pay the above bonuses came directly from the bank account maintained by the Center to receive and use federal contract money for the Tribe's health care programs.

Count I charges Webster-Valentino and Freemont with conspiracy to convert and misapply $5,000 or more from a program receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A) and § 371, and conspiracy to convert and misapply moneys of a health care benefit program in violation of 18 U.S.C. § 669 and § 371. The other seven defendants are charged in Count II with the same conspiracy as in Count I.

Counts III through XI charge each Defendant with one count of conversion and misapplication of federal program funds in violation of 18 U.S.C. § 666(a)(1)(A). Webster-Valentino and Freemont are additionally charged with aiding and abetting the misapplication and conversion for each other Defendant as described in Counts V through XI.

Counts XII through XX charge each Defendant with one count of misapplication of funds of a healthcare benefit program in violation of 18 U.S.C. § 669. Webster-Valentino and Freemont are additionally charged with aiding and abetting the misapplication and conversion of the healthcare funds for each other Defendant as described in Counts XIV through XX.

The Defendants filed the instant motions to dismiss all of the above charges for lack of subject matter jurisdiction.

## ANALYSIS

"The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. As Defendants recognize, Indian tribal members are subject to federal jurisdiction for crimes of general applicability. (Filing No. 162 at p. 5)(citing *United States v. Wadena*, 152 F.3d 831, 841 (8th Cir. 1998). Defendants also acknowledge that the statutes they are charged with violating, 18 U.S.C. § 666 and § 669, are statutes of general applicability. (Filing No. 162 at pp. 5-6)(citing *United States v. Bruce*, 394 F.3d 1215, 1221 (9th Cir. 2005)). Defendants nonetheless argue this court does not have subject matter jurisdiction over the instant prosecution. Defendants' jurisdictional argument is premised on their assertion that the monies

---

[2] Defendants acknowledge in their brief that the settlement was not formally approved until 2015. (Filing No. 162 at p. 4. n.1).

4

used to make the bonus payments were not federal funds, but were instead "unrestricted settlement funds" owed to the Omaha Tribe from the ISDA contract litigation, over which the tribe had exclusive authority. (Filing No. 161 at p. 2).

Defendants cite *United States v. Newell*, 658 F.3d 1 (1st Cir. 2011) to support their position that a federal district court does not have jurisdiction to entertain a prosecution under § 666 for mismanagement of an Indian tribe's settlement money. (Filing No. 162 at p. 8). However, the First Circuit Court of Appeals in *Newell* rejected the defendant's jurisdictional argument. In *Newell*, the evidence at trial showed that when the defendant was the tribal governor, he "channeled money from the accounts of various federally funded programs into non-approved uses," including paying payroll, general assistance, and salaries of "ghost employees," and also "improperly redirect[ed] federal grant money to help friends and family." *Id.* at 7, 14. Although the defendant attempted to argue the Maine Indian Claims Settlement Act, 25 U.S.C. §§ 1721-35, deprived the federal court of jurisdiction over what he claimed were "internal tribal matters," the First Circuit found that "the conduct alleged in [the indictment] involve[d] mismanagement of federal grants and contracts," which did not "constitute internal tribal matters." *Newell*, 658 F.3d at 13. The First Circuit "express[ed] no opinion" as to whether prosecution under § 666 for mismanagement of settlement fund income "would or would not implicate the internal tribal matters exception to federal jurisdiction[.]" *Id.*[3]

Regardless of Defendants' assertion that the bonuses were paid purely from contract settlement funds, when reviewing the sufficiency of an indictment on a motion to dismiss, the Court must "accept the government's allegations as true, without reference to allegations outside the indicting document." *United States v. Steffen*, 687 F.3d 1104, 1107 n. 2 (8th Cir. 2012)(quoting *United States v. Farm & Home Sav. Ass'n*, 932 F.2d 1256, 1259 n. 3 (8th Cir .1991)). If an indictment "contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution," it will survive a pretrial motion to dismiss. *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008)(quoting *United States v. Hernandez*, 299 F.3d 984, 992 (8th Cir. 2002)).

---

[3] As the government points out in its brief, Defendants have not directed the Court to any authority to support their position that the settlement funds the Omaha Tribe received in this case would somehow "lose their character as federal program funds," since the purpose of the settlement funds were to reimburse tribes for Congress's failure to appropriate sufficient funds to fully pay federal contracts, including IHS 638 contracts. (Filing No. 196 at p. 10).

As set forth in the Background section above, the Indictment plainly alleges each essential element of the offense for conversion and misapplication of federal program funds in violation of 18 U.S.C. § 666(a)(1)(A), and conspiracy to violate § 666. This section makes it a crime for an agent of an Indian tribal government to convert or intentionally misapply property valued at $5,000 or more owned by/under the custody or control of the tribal government. See 18 U.S.C. § 666(a). The Indian tribal government must receive more than $10,000 a year in benefits under a federal program, grant, or other form of federal assistance. See 18 U.S.C. § 666(b). The government is not required to establish a "nexus" between the federal funds establishing jurisdiction under § 666(b) and the alleged activity constituting a violation under § 666(a). See *United States v. Hines*, 541 F.3d 833, 836 (8th Cir. 2008)(citing *Sabri v. United States,* 541 U.S. 600 (2004)("[T]he plain language of [§ 666] does not require, as an element to be proved beyond a reasonable doubt, a nexus between the activity that constitutes a violation and federal funds."). In enacting § 666, Congress intended to "preserve the integrity of federal funds by lessening the burden of federal prosecutors to prove what may be an impossible-to-trace, but very real, impact of local corruption on federal funds." *Id.* In this case, the government alleges that (1) the Defendants were agents of the Omaha Tribe, which is an Indian tribal government; (2) the Omaha Tribe received benefits in excess of $10,000 in grants, contracts, and agreements from the IHS, an agency of the federal government, during fiscal year 2012-2013; (3) the Defendants intentionally misapplied, and without authority converted to themselves and others, property valued at $5,000 or more, by prematurely paying bonuses in unreasonable amounts using funds from the Center's bank account, and by using funds for purposes unrelated to the funds' designated purpose; and (4) the property was owned by and under the control of the Omaha Tribe. See 18 U.S.C. § 666(a)-(b); see also Eighth Circuit Manual of Model Jury Instructions (Criminal) § 6.18.666A (Theft Concerning a Program Receiving Federal Funds) (2014).

The Indictment also plainly alleges the essential elements of the offense for conversion and misapplication of federal program funds of a health care benefit program in violation of 18 U.S.C. § 669 and conspiracy to violate § 669. This section makes it a crime to knowingly or otherwise without authority "convert[] to the use of any person other than the rightful owner, or intentionally misappl[y] any of the moneys, funds, . . . property, or other assets of a health care benefit program[.]" 18 U.S.C. § 669(a). "Health care benefit program" is defined as "any public

6

or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C. § 24. The Indictment alleges that the bonuses issued by the Defendants in October and November 2012 were paid out of the Carl T. Curtis Health Education Center's bank account, which account was maintained for the receipt of federal contract funds used to pay for the Tribe's health care programs.

The Indictment contains all the essential elements of the charged offenses, fairly informs Defendants of the charges, and alleges sufficient information for Defendants to raise a Double Jeopardy challenge to a subsequent prosecution. See *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008)(stating an indictment will survive a motion to dismiss "if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution."). At trial, the government will need to meet its burden to establish, beyond a reasonable doubt, that the allegations contained in the Indictment are true. But because the Indictment sufficiently describes violations of 18 U.S.C. § 666(a)(1)(A) and § 669, and conspiracy to violate those provisions, this Court has subject matter jurisdiction over the instant prosecution. Accordingly,

**IT IS HEREBY RECOMMENDED** to United States District Judge Robert F. Rossiter, Jr., that Defendants' Joint Motion to Dismiss Indictment for Lack of Federal Jurisdiction (Filing No. 161) and the Motion to Dismiss Indictment for Lack of Federal Jurisdiction (Filing No. 183) filed by Defendant Tillie Aldrich be denied.

Dated this 13th day of December, 2017.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

7

**ADMONITION**

Pursuant to NECrimR 59.2, any party may object to a magistrate judge's findings and recommendation by filing a statement of objections within fourteen (14) days after being served with the findings and recommendation. The party must specify the parts of the findings and recommendation to which the party objects and the legal basis of the objections. Failure to timely object may constitute a waiver of any objection.