IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiffs, | 8:16CR277 |
| vs. | |
| JESSICA WEBSTER-VALENTINO; BARBARA FREEMONT; AMEN SHERIDAN; RODNEY MORRIS; DORAN MORRIS, JR.; FORREST ALDRICH; MITCHELL PARKER; TILLIE ALDRICH; and JEFF MILLER, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on a multitude of filings. Defendants Jessica Webster-Valentino ("Webster-Valentino"), Barbara Freemont ("Freemont"), Amen Sheridan ("Sheridan"), Rodney Morris ("Morris"), Doran Morris, Jr. ("Morris, Jr."), Forrest Aldrich ("F. Aldrich"), Mitchell Parker ("Parker"), Tillie Aldrich ("T. Aldrich"), and Jeff Miller ("Miller" and collectively, "defendants") have moved to (1) sever their trials (Filing Nos. 155, 159, 165, 167, 171, 172, 177, 181, and 184), (2) dismiss various counts of the Indictment on multiplicity grounds (Filing Nos. 157, 163, 168, 169, 175, 179, 182, 186, and 189), and (3) dismiss the Indictment for lack of federal jurisdiction (Filing Nos. 161 and 183).

The magistrate judge[1] issued an Order denying the motions to sever in part and granting them in part (Filing No. 211), and recommended (Filing Nos. 209 and 210) the Court deny the various motions to dismiss.

---

[1] The Honorable Michael D. Nelson, United States Magistrate Judge for the District of Nebraska.

The defendants, except for Freemont and Webster-Valentino, jointly and individually objected (Filing Nos. 218, 220, 221, 223, 225, and 227) to the partial denial of severance. The defendants jointly objected (Filing No. 216) to the recommendation to deny the motions to dismiss the Indictment for lack of federal jurisdiction. No defendant objected to the recommendation to deny the motions to dismiss various counts of the Indictment on multiplicity grounds.

For the reasons stated below, the objections to the magistrate judge's recommendations and Order are overruled, the findings and recommendations of the magistrate judge are accepted, and the defendants' motions to dismiss are denied.

## I. BACKGROUND

"[I]n considering a motion to dismiss an indictment, 'we accept the government's allegations as true, without reference to allegations outside the indicting document.'" *United States v. Birbragher*, 603 F.3d 478, 481 (8th Cir. 2010) (quoting *United States v. Farm & Home Sav. Ass'n*, 932 F.2d 1256, 1259 n.3 (8th Cir. 1991)).

### A. The Parties

The Omaha Tribe of Nebraska ("Omaha Tribe") is a federally recognized Indian tribe located in the District of Nebraska and is governed by a tribal council elected by members of the tribe. At the time of the alleged offenses, the tribal council consisted of a Chairman (Sheridan), Vice-Chairman (Morris, Jr.), Secretary (F. Aldrich), Treasurer (Miller), and three general members (Morris, T. Aldrich, and Parker) (collectively, "tribal-council defendants"). Webster-Valentino served as the Administrative Officer of the Carl T. Curtis Health Education Center ("Curtis Center"), and Freemont was employed in the Finance Department of the Omaha Tribe (collectively, "administrative defendants").

### B. The Curtis Center

The Indian Health Services ("IHS") is an agency within the United States Department of Health and Human Services. The IHS provides funding to the Omaha Tribe for various programs pursuant to the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. 450 *et seq*. Because the ISDEAA was enacted as Public Law 93-638, contracts between the IHS and various tribes pursuant to the ISDEAA are referred to as 638 contracts.

The Curtis Center is located on the Omaha Indian Reservation. The Curtis Center received some of its funding from a 638 contract and also billed insurance companies and Medicaid for services rendered. The IHS contract placed conditions on the use of the funds by the Omaha Tribe. Funds received under the 638 contract were deposited into an account at Charter West National Bank. The account was known as "checkbook 29" and was used to pay the Curtis Center's expenses.

Before a tribal program expended any funds, a Purchase Requisition form would be prepared and submitted to the Finance Department. The form would identify the entities to receive the payment, the amount, the account the funds would come from, and, frequently, the justification for the payment.[2]

Between 1995 and 2011, IHS entered into 638 contracts with various tribes, but Congress did not appropriate enough funds to pay the contracts in full. IHS developed a procedure whereby it paid a percentage of each contract. In 2012, the United States Supreme Court determined the IHS must pay all of the 638 contracts in full. *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 201 (2012). The Omaha Tribe filed claims for reimbursement in 2005 for the contract years 1995 through 2005, and in 2012 for the

---

[2]The Omaha Tribe typically utilized the services of Bland and Associates ("Bland"), an accounting firm, to process checks. Bland did not have veto power over any payments, but did advise the Omaha Tribe as to whether a proposed payment was an allowable expense, properly documented, or properly justified. The payments at issue in this case did not go through Bland.

contract years 2006 through 2011. The IHS informed the Omaha Tribe it had received the claims but expressly indicated its response was not an acknowledgement of the validity of the claims. The claims were ultimately settled and paid in 2015.

### C. Alleged Criminal Activity

At some time after the Omaha Tribe filed its claim in 2012, Webster-Valentino and Freemont proposed bonuses for individuals who had worked on submitting the claim. On October 16, 2012, Webster-Valentino emailed Freemont three different proposals for bonus payments for the defendants. Freemont responded with the amount she preferred and suggested increasing the amount for the members of the tribal council to ease approval. Webster-Valentino confirmed the changes, increasing the proposed tribal-council bonuses from $8,936.29 to $13,404.44 per council member. Webster-Valentino also suggested the best source for the bonuses would be the contract carryover funds from the Curtis Center.

On October 17, Freemont emailed Webster-Valentino, telling her to send a requisition form to Miller for approval. Miller signed and submitted a purchase requisition form authorizing the bonus payments the same day. Sheridan and F. Aldrich signed a check from checkbook 29 payable to Morris, and Morris and F. Aldrich signed a check from checkbook 29 payable to Sheridan. On October 18, Freemont cashed a $7,000 check from checkbook 29.

On October 23, Freemont sent a letter to Miller in support of the bonus request. On October 25, Morris and F. Aldrich gave Freemont and Webster-Valentino written approval to their proposal of the bonus payments. Webster-Valentino then cashed a $7,000 check from checkbook 29. On October 26, Webster-Valentino cashed an $82,362 check from checkbook 29. On October 29, Freemont cashed an $82,362.92 check from checkbook 29.

4

On November 5, at a council meeting, Morris made and F. Aldrich seconded a motion to approve Freemont's request to pay a percentage of the IHS settlement to members of the tribal council and other employees. Morris, F. Aldrich, Parker, Miller, and T. Aldrich[3] voted to approve the motion.[4]

T. Aldrich made and F. Aldrich seconded a motion to pay $7,500 apiece to past tribal-council members dating back to 1994. Morris, Morris, Jr., F. Aldrich, Parker, T. Aldrich, and Miller[5] voted to approve the motion. Morris, Jr., Parker, T. Aldrich, and Sheridan each cashed a $7,000 check from checkbook 29 that same day.

### D. Indictment

On September 21, 2016, a grand jury returned a twenty-count indictment against the defendants. Count I charged Webster-Valentino and Freemont with conspiracy, 18 U.S.C. § 371, (1) to convert $5,000 or more from a program receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A), and (2) to convert moneys of a health care benefit program[6] in violation of 18 U.S.C. § 669. Count II alleged the same conspiracy as Count I against the tribal-council members.

Count III charged Webster-Valentino with unauthorized conversion of $5,000 or more from a program receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A). Count IV charged Freemont with the same offense, and Counts V through XI charged

---

[3]All of the tribal-council members except Morris, Jr. and Sheridan voted to approve. It is unclear if they voted against, abstained, or were not present.

[4]Pursuant to the second motion, Morris submitted a purchase requisition form in the amount of $211,500. However, that $211,500 was not disbursed because Webster-Valentino refused to permit Curtis Center funds to be used for that purpose.

[5]All of the tribal-council members except Sheridan voted to approve.

[6]A "health care benefit program" is defined as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C. § 24(b).

5

each individual tribal-council member with the same offense. Webster-Valentino and Freemont were also charged on Counts V through XI as aiders and abettors. *See* 18 U.S.C. § 2.

Count XII charged Webster-Valentino with unauthorized conversion of money from a health care benefit program in violation of 18 U.S.C. § 669. Count XIII charged Freemont with the same offense, and Counts XIV through XX charged each individual tribal-council member with the same offense—again charging Webster-Valentino and Freemont on each count as aiders and abettors.

## II. DISCUSSION

### A. Motions to Sever

Each defendant has moved to sever his or her trial from the trial of any co-defendants. The magistrate judge severed the defendants into two groups for trial: (1) the administrative defendants and (2) the tribal-council defendants, each with its own trial. The tribal-council defendants objected to that Order (Filing No. 211) on severance.[7] This Court may reconsider the magistrate judge's Order if it "is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

"There is a preference in the federal system for joint trials of defendants who are indicted together." *United States v. Anderson*, 783 F.3d 727, 743 (8th Cir. 2015) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). "This preference is 'especially compelling when the defendants are charged as coconspirators.'" *Id*. (quoting *United States v. Basile*, 109 F.3d 1304, 1309 (8th Cir. 1997)). However, if the joinder of defendants in "a consolidation for trial appears to prejudice a defendant . . . the court may . . . sever the defendants' trials." Fed. R. Crim. P. 14(a). The presumption in favor of joint trials "can only be overcome if the prejudice is 'severe or compelling.'" *United*

---

[7]Although the defendant's objections to the Order appear to have been untimely, the government did not raise the issue.

*States v. Lewis*, 557 F.3d 601, 609 (8th Cir. 2009) (quoting *United States v. Crumley*, 528 F.3d 1053, 1063 (8th Cir. 2008)).

In this case, the defendants allege failing to sever their cases violates their rights under the Confrontation Clause as noted in *Bruton v. United States*, 391 U.S. 123 (1968). Defendants have a Sixth Amendment right to confront the witnesses against them, and a Fifth Amendment right to avoid being witnesses against themselves. "In a joint trial, these rights collide when co-defendants implicate each other in confessions that are introduced into evidence." *United States v. Ortiz*, 315 F.3d 873, 899 (8th Cir. 2002). "In *Bruton*, the Supreme Court held that the admission of a nontestifying defendant's statement inculpating a codefendant violates the codefendant's Confrontation Clause rights, notwithstanding a curative instruction." *United States v. Lewis*, 557 F.3d 601, 611 (8th Cir. 2009).

To avoid *Bruton* problems, the government may redact the statements to avoid direct references to defendants. *United States v. Gayekpar*, 678 F.3d 629, 637 (8th Cir. 2012). When a redacted statement "does not refer directly to the codefendant himself, and becomes incriminating only in combination with other evidence, the Constitution permits the normal presumption that a jury will follow an instruction to disregard the confession when considering a verdict for the codefendant." *Id*. However, "a redacted statement that 'draws the jury's attention to the fact that a name was omitted and invites the jury to fill in the blank'" is impermissible. *United States v. Valdez*, 146 F.3d 547, 552 (8th Cir. 1998) (quoting *United States v. Long*, 900 F.2d 1270, 1280 (8th Cir. 1990)).

In this case, the defendants have given statements that name various co-defendants. The government submitted the defendants' statements that it intended to use as evidence and a proposed redaction plan to the magistrate judge. *See* Fed. R. Civ. P. 14(b). The magistrate judge modified the redaction plan, ordering that (1) no statement refer to a person's specific title, (2) no statement use a pronoun that would lead to only

one potential person, and (3) the statements of Webster-Valentino and Freemont not refer to their employment but to "another person."

The redacted statements do not refer directly to co-defendants nor do they invite the jury to fill in the blank. The defendants each argue that their specific positions on the tribal council will lead the jury to speculate that they are the redacted individual. After reviewing the statements, the Court finds this argument unpersuasive. There is no statement that would automatically lead the jury to insert any particular tribal-council position into the statement.

The Court is also mindful of the rule of completeness and the purpose for which the government is offering the statement. The rule of completeness applies "where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the declarant." *United States v. Kaminski*, 692 F.2d 505, 522 (8th Cir. 1982). In that case, the complete statement would have to be admitted, and "[i]f the government insists on using the confession, severance is often required." *Id*. If a statement exculpates the declaring defendant but incriminates a co-defendant, then the statement could only be offered by the government for its prejudicial effect and should be excluded. *United States v. Gordon*, 253 F.2d 177, 184.

Those concerns do not apply here. The redactions do not distort the meanings of the statements. Further, the statements are not exculpatory of any declarant. Thus, they are not offered solely for their prejudicial effect. The magistrate judge's Order was not clearly erroneous or contrary to law, and the objections are overruled.

    **B.**     **Multiplicity**

The defendants have moved (Filing Nos. 157, 163, 168, 169, 175, 179, 182, 186, and 189) to dismiss various counts of the Indictment on multiplicity grounds. The magistrate judge has recommended (Filing No. 210) the Court deny these motions. Neither party has objected within the time permitted. *See* 28 U.S.C. § 636(b)(1)(C). The

Court accepts the magistrate judge's recommendation on the multiplicity issue, and the motions to dismiss various counts of the Indictment on multiplicity grounds are denied.

### C. Federal Jurisdiction

The defendants jointly moved (Filing Nos. 161 and 183)[8] to dismiss the Indictment for lack of federal jurisdiction. The magistrate judge recommended (Filing No. 209) the motion be denied, and the defendants jointly objected (Filing No. 216).

An indictment is not deficient "it if contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Steffen*, 687 F.3d 1104, 1109 (8th Cir. 2012) (quoting *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993)).

#### 1. Elements of the Crimes

The crime of theft concerning a program receiving federal funds, as charged in this case, has four elements: (1) the defendant was an agent of the Omaha Tribe; (2) during the period between October 17, 2012, and November 13, 2012, the defendant intentionally misapplied, and converted to the use of defendant without authority, property of a value of at least $5,000; (3) the property was owned by and under the care, custody, and control of the Omaha Tribe; and (4) the Omaha Tribe received benefits in excess of $10,000 in the 2012 fiscal year. 18 U.S.C. § 666(a)(1)(A); *see* 8th Cir. Criminal Jury Instr. 6.18.666A (2014).

The crime of theft or embezzlement in connection with health care, as charged in this case, has two elements: (1) during the period between October 17, 2012, and November 13, 2012, the defendant intentionally misapplied, and converted to the use of

---

[8]Although included in Filing No. 161, T. Aldrich later filed an individual motion on the same topic.

defendant without authority, property of a value exceeding $100; and (2) the property was an asset of a health care benefit program. 18 U.S.C. § 669.[9]

### 2. Defendants' Arguments

The defendants' main argument is that the Indictment fails to establish the existence of federal-program funds or funds designated for a health care benefit program. They claim the money ultimately paid out as bonuses came from a lawsuit settled out of the "Judgment Fund" and not from a federal appropriation. Under the tribe's "power of regulating their internal and social relations," *United States v. Wheeler*, 435 U.S. 313, 322 (1978) (quoting *United States v. Kagama*, 118 U.S. 375, 381-82 (1886)), the defendants claim this Court lacks jurisdiction to hear the charges. The defendants point specifically to *United States v. Newell*, 658 F.3d 1 (1st Cir. 2011), as support for the concept that § 666(a)(1)(A) is unenforceable against settlement funds. This contention is inaccurate for several reasons.

First, the factual basis for this argument is directly contradicted by the facts alleged in the Indictment. The bonus payments at issue here were made in 2012, and the IHS claims were not settled and paid until 2015. The settlement funds could not have been used to pay the bonuses.

Second, part of the issue in *Newell* was the application of a Maine statute restricting the regulation of internal tribal matters, 30 M.R.S.A. § 6206, that was incorporated into the United States Code, 25 U.S.C. § 1725(f). That statute is not at issue here.

Finally, the Court has the power to hear alleged violations of § 666 and § 669 because they are statutes of general applicability. *See United States v. Wadena*, 152 F.3d 831, 841 (8th Cir. 1998) ("[F]ederal courts may enforce general federal criminal laws

---

[9]The charges in the Indictment are also based on aiding and abetting, 18 U.S.C. § 2, and conspiracy, 18 U.S.C. § 371, but those charges are not at issue.

against all persons, including Indians within Indian country."). According to the Indictment, the bonuses were paid out of checkbook 29. Checkbook 29 was property owned by and under the care, custody, and control of the Omaha Tribe, and was also an asset of a health care benefit program.[10] Whether the funds used for the bonus payments were settlement funds or appropriated funds is irrelevant because there is no need for a nexus between the federal funds received and the funds allegedly misapplied.[11] *See Sabri v.United States*, 541 U.S. 600, 604 (2004) (declining to extend a nexus requirement to a violation of § 666(a)(2)); *United States v. Spano*, 401 F.3d 837, 841 (7th Cir. 2005) (extending *Sabri* to § 666(a)(1)(A)). The funding amounts, amount of funds converted, and status of the defendants as Omaha Tribe agents are not in dispute.

Because the Indictment contains all the essential elements of the crimes charged, dismissal is inappropriate. The Court accepts the recommendation of the magistrate judge, and the motions to dismiss are denied.

## III. CONCLUSION

The magistrate judge did not clearly err when he ordered the tribal-council defendants to be tried together. The defendants did not object to the magistrate judge's recommendation to deny the motions to dismiss various counts of the Indictment on

---

[10]The Indictment specifically alleges that the Curtis Center is a health care benefit program as defined by 18 U.S.C. § 24(b), which is a specific allegation the defendants do not dispute.

[11]It is possible the nature of the funds is relevant to whether the bonuses constituted unauthorized conversion or bonuses which the tribal council had the lawful authority to pay. However, at this stage the Court takes as true the allegation in the Indictment that the defendants converted the funds without authority. *Birbragher*, 603 F.3d at 481. To the extent the defendants are arguing this Court is incapable of determining the defendants' authority to pay the bonus because "[j]urisdiction to . . . interpret tribal constitutions and laws . . . lies with Indian tribes and not in the district courts," *In re Sac & Fox Tribe of the Miss. in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 763 (8th Cir. 2003), the Court is clearly capable, at the very least, of determining if the bonus payments violated the terms of the 638 contract, which is not an internal tribal matter but a contract between the federal government and Omaha Tribe.

multiplicity grounds, and the recommendation is accepted. The Indictment meets all the requirements for federal jurisdiction and will not be dismissed. Accordingly,

IT IS ORDERED:

1. The defendants' joint objection (Filing No. 216) to the recommendation to deny the motions to dismiss the Indictment for lack of federal jurisdiction is overruled.

2. The tribal-council defendants' joint and individual objections (Filing Nos. 218, 220, 221, 223, 225, and 227) to the magistrate judge's Order (Filing No. 211) are overruled.

3. The magistrate judge's Findings and Recommendations (Filing Nos. 209 and 210) are accepted.

4. The defendants' motions to dismiss various counts of the Indictment on multiplicity grounds (Filing Nos. 157, 163, 168, 169, 175, 179, 182, 186, and 189) and to dismiss the Indictment for lack of federal jurisdiction (Filing Nos. 161 and 183) are denied.

Dated this 6th day of February, 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge